UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL BROWN,

                             Petitioner,                    **DECISION AND ORDER**

              -vs-                                          No. 02-CV-6286

EDWARD DONNELLY,
                             Respondent.


_____

## INTRODUCTION

Paul Brown ("Brown") filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 challenging his conviction in Monroe County Court on one count of criminal

possession of a controlled substance in the third degree and one count of criminal possession of a

controlled substance in the seventh degree. The parties have consented to disposition of this

matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND

On the night of April 1, 1997, Officer Salway of the Rochester Police Department

approached a parked car on Merrimac Street occupied by two individuals. While standing outside

the car, Officer Salway observed the female in the front passenger's seat attempting to hide

ziplock bags. These bags, according to Officer Salway, appeared to contain a cocaine-like

residue. Upon questioning, Carter Gupton ("Gupton"), the driver of the car, stated that he had

purchased the bags of cocaine earlier that evening from a house in the general vicinity. While

riding in the police car with Officer Adami, Gupton pointed out the downstairs apartment at 51

Sullivan Street as the location where he had purchased the cocaine; it was later determined to be the residence of petitioner Brown.

When Officers Salway and Adami first approached Brown's apartment shortly before 10 p.m., they decided not to investigate further because it appeared that no one was home. At about 1:15 a.m., the officers returned to the apartment and observed activity within. Officer Salway knocked on the front door. Officer Adami stood next to Salway, and two other officers guarded the perimeter. Brown opened the door and, according to Officer Adami, appeared surprised to see uniformed police officers on his porch. As Brown stood in the doorway, the officers looked inside and were able to see plastic baggies containing a white, rock-like substance on the kitchen counter about ten to twelve feet behind Brown. The only other person in the apartment was Brown's girlfriend, Sharnette Holoman, who was sitting in a chair near the kitchen.

Fearful that Brown or his girlfriend would attempt to dispose of the cocaine, Officer Adami entered the house and seized the plastic baggies that were lying on the counter. The officer also seized $297 in cash on the counter next to the cocaine and a handgun found in an adjacent room. Brown then was placed under arrest by Officer Salway.

Following his indictment on two counts of third degree criminal possession of a controlled substance and one count of fourth degree criminal possession of a weapon, Brown moved to suppress all of the physical evidence as the product of an unlawful entry and an unlawful search of his home. After visiting the crime scene in order to determine whether it was possible for the police to have seen the drugs in "plain view" while standing on the front porch, the trial judge denied the suppression motion to the extent that it sought to preclude the use of the drugs and the money at trial. The court decided to suppress the handgun, finding that the

prosecution failed to establish that a search of the room in which the gun was found was necessary to insure the officers' safety. The weapons charge accordingly was withdrawn.

Brown's jury trial commenced on September 16, 1997, in Monroe County Court. The jury acquitted him of the first count of criminal possession of a controlled substance (N.Y. Penal Law § 220.16(1)) which alleged the possession of a narcotic drug with intent to sell. Brown was convicted of count two of the indictment alleging a violation of N.Y. Penal Law § 220.16(2) (possession of one or more preparations, compounds, mixtures or substances containing a narcotic drug and weighing one-half ounce or more). Brown also was convicted of seventh degree criminal possession of a controlled substance, a lesser included offense of count one. The court sentenced Brown to 8⅓ to 25 years of incarceration in state prison.

## PROCEDURAL HISTORY

Brown appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Three of the four justices on the panel voted to affirm the conviction. *People v. Brown*, 274 A.D.2d 941 (4th Dept. 2000). Although the New York Court of Appeals granted leave to appeal, it ultimately affirmed the conviction. *People v. Brown*, 95 N.Y.2d 942 (2000).

Brown filed a petition for a writ of habeas corpus (Docket #1) in this Court on May 6, 2002, alleging that (1) the warrantless search of his residence was unconstitutional; (2) the trial court erroneously charged the "drug factory" presumption; (3) inadmissible hearsay was introduced at this trial; and (4) his sentence was harsh and excessive. Respondent answered the petition (Docket #6) on September 13, 2002. The Court directed Brown to submit further information concerning the timeliness of his petition; he did so on June 19, 2002. *See* Docket #4.

In that pleading, Brown explained that although the one-year statute of limitations under 28

U.S.C.§ 2244(d)(1) was scheduled to expire on March 16, 2002, he had collaterally attacked the

effectiveness of his appellate counsel in an application for a writ of error *coram nobis* filed on

February 28, 2002. That application remained pending until April 26, 2002, when it was denied

by the Appellate Division, Fourth Department, of New York State Supreme Court. Thus, the

statute of limitations was tolled during the pendency of that motion, *see* 28 U.S.C. § 2244(d)(2),

making Brown's petition timely.

In a letter to the Court dated September 26, 2002, Brown stated that he wished to exhaust

claims stemming from alleged "violations consist[ing] of the complete failure of trial counsel to

move to suppress the contraband by explicitly challenging the police return and intrusion without

a warrant, over three hours later, of petitioner[']s home, in absence of any exigent

circumstances." *See* Docket #9. On November 19, 2002, the Court granted Brown's motion for a

stay so that he could return to State court to exhaust his remedies with regard to several claims of

ineffective assistance of trial counsel. A review of the record below indicates that trial counsel

did move to suppress the seized contraband on the basis that exigent circumstances did not exist

to justify the warrantless entry, search, and seizure. In any event, when Brown returned to state

court, he only challenged the effectiveness of his appellate counsel in an application for a writ of

error *coram nobis*. Brown did not move to vacate his conviction on the ground that trial counsel

was ineffective.

On April 8, 2004, Brown submitted an untitled pleading on (Docket #16) which the Court

has deemed an amended petition. As additional claims for habeas relief, Brown asserts that he

did not receive the effective assistance of appellate counsel and that he was subjected to a search

and seizure in violation of the Fourth Amendment. *See* Docket #16.  Respondent states that it

does not raise the failure to exhaust with respect to any of Brown's claims. After reviewing

Brown's pleadings, the Court finds that his claims have been fully exhausted and are properly

before the Court on habeas review. For the reasons set forth below, Brown's habeas petition is

denied.

## DISCUSSION

## Merits of the Petition

## I.       Fourth Amendment Claim

Brown contends that the trial court erred in ruling that the cocaine and money seized from

his residence were admissible. He asserts that the police illegally entered his home without a

warrant because there was no probable cause to search his residence. He also contends that the

"plain view" exception was inapplicable under the circumstances.[1] On direct appeal, a three-

fourths majority of the Appellate Division rejected this claim, holding that the police had

probable cause to believe that defendant had committed a crime in their presence and that

contraband was present in his apartment. The court further found that although the prosecution

"did not explicitly elicit testimony on the issue of exigency" at the suppression hearing, it was

"well known" that individuals who engage in drug trafficking "will often attempt to dispose of

---

[1]  The Fourth Amendment provides in relevant part as follows: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "plain view" exception to the warrant requirement "authorizes seizure of illegal or evidentiary items visible to a police officer whose access has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *United States v. Jenkins*, 876 F.2d 1085, 1088 (2d Cir. 1989) (citations omitted). The warrantless seizure of contraband is proper under the plain view exception when (1) the police have lawful access to the place from which the item can be plainly viewed; (2) the item seized is in fact in plain view at the time it is discovered; and (3) it is "immediately apparent" to the police at the time of discovery that the item constitutes evidence of an instrumentality of, or the fruit of, a crime. *See Horton v. California*, 496 U.S. 128 (1990).

the narcotics or escape." *People v. Brown*, 274 A.D.2d at 941 (citing *People v. Clements*, 37 N.Y.2d 675, 684-685 (1975); *People v. Seaberry*, 138 A.D.2d 422, 422-423 (2d Dept.), *lv. denied*, 72 N.Y.2d 866 (1988)). Thus, the majority found, the record "adequately establishe[d] that exigent circumstances justified the warrantless entry by the police." *Id.*

One justice of the Appellate Division dissented, faulting the majority for focusing solely the plain view exception when other issues were in dispute–namely, that the prosecution failed to present proof on the issue of exigent circumstances, make an effort to show that obtaining a warrant would not have been reasonable, or demonstrate that defendant was a flight-risk. The dissenting justice argued that, by inferring the presence of exigent circumstances, the majority improperly relieved the prosecution of its burden of proof. *People v. Brown*, 274 A.D.2d at 943 (Scudder, J.) (dissenting opinion). The New York Court of Appeals granted leave to appeal but ultimately affirmed the conviction. *People v. Brown*, 95 N.Y.2d 942 (2000).

In general, State court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted).  The Second Circuit has noted that *Stone* requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim."  *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978) (emphasis added).  A Federal court may undertake habeas review only in one of two instances: (1) "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the

state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ."  *Id.* at 840; *accord Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983).  Here, New York clearly affords defendants the requisite corrective procedures. *See* N.Y. Crim. Proc. Law § 710.10 *et seq.*; *see also Capellan*, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988) as being facially adequate").

Brown may not raise his Fourth Amendment claims on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate these matters in state court.  Defense counsel filed a thorough motion in the trial court in which he vigorously contested the validity of the police officer's entry into Brown's residence and seizure of the cocaine and money. Following a hearing, during which the court took the unusual step of visiting the location where the evidence was seized, the court denied the motion to suppress in a written opinion setting forth its findings of fact and conclusions of law. Brown then had an opportunity to appeal to the Appellate Division, which likewise considered and rejected his Fourth Amendment claim on the merits. Finally, the Court of Appeals reviewed Brown's appeal on the merits but affirmed the conviction.

Brown's various applications at the trial court and appellate levels challenging the search

warrant clearly show that he was given an opportunity for a "full and fair" litigation of his Fourth

Amendment claim. Therefore, in order for Brown's Fourth Amendment claim to be cognizable

on habeas review, therefore, it must be based on a contention that there was an "unconscionable

breakdown" in the underlying state court procedural mechanism.  *See Capellan*, 975 F.2d at 70.

Brown cannot demonstrate that an "unconscionable breakdown" occurred in the courts

below. His assertions that appellate counsel was incompetent and the State courts incorrect do

not constitute the sort of "breakdown" referred to in *Gates v. Henderson*. Nor is Brown's

dissatisfaction with the outcome of the suppression hearing evidence of a "breakdown" in the

State's procedures for litigating Fourth Amendment claims. Rather, an "unconscionable

breakdown in the State's process must be one that calls into serious question whether a

conviction is obtained pursuant to those fundamental notions of due process that are at the heart

of a civilized society."  *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852

F.2d 59 (2d Cir. 1988) (*per curiam*); *accord*, *Capellan*, 975 F.2d at 70 (observing that some sort

of  "disruption or obstruction of a state proceeding" of an egregious nature, *e.g.*, the bribing of a

trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the

record before me. Even if the State court erroneously decided the issue, a petitioner cannot gain

federal review of a Fourth Amendment claim simply because a Federal court may reach a

different result. *See Capellan v. Riley*, 975 F.2d at 71 (citation omitted).[2] Thus, although I tend to

---

[2] The Second Circuit observed that if it were to read *Stone v. Powell* as "requiring [habeas courts] to focus on the correctness of the outcome resulting from the application of adequate state court corrective procedures, rather than on the existence and application of the corrective procedures themselves, [it] would be assuming, implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Id.* As the circuit court noted, however, *Stone v. Powell* "expressly discourages" reviewing courts from making any such assumption. *Id.* (citing *Stone*, 428 U.S. at 493-94 n. 35 ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States[.]").

-8-

agree with Brown that the Appellate Division wrongly decided his suppression argument, I am

precluded from considering his fully litigated Fourth Amendment claim on habeas review.

## II.      Improper "Drug Factory" Jury Instruction

Brown contends that, given the absence of any proof that his residence was a "drug

factory," trial court erroneously charged the statutory presumption of knowing possession set

forth in New York Penal Law § 220.25(2).

The adequacy of a state court's jury instruction is a matter of state law and is not

ordinarily grounds for federal habeas relief. *See*, *e.g.*, *United States ex rel. Smith v. Montayne*,

505 F.2d 1355, 1359 (2d Cir. 1974); *see also Blazic v. Henderson*, 900 F.2d 534, 541-43 (2d Cir.

1990) (finding that although failure to charge jury on justification defense was error of state law,

error did not constitute grounds for federal habeas relief). The Second Circuit repeatedly has held

that "'[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state

court's instructions to the jury on matters of state law, the petitioner must show not only that the

instruction misstated state law but also that the error violated a right guaranteed to him by federal

law.'" *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Casillas v. Scully*, 769 F.2d 60,

63 (2d Cir. 1985)).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will

support a collateral attack on the constitutional validity of a state court's judgment is even greater

than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431

U.S. 145, 154 (1977). Thus, the habeas petitioner faces a substantial hurdle and must show "not

merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it

violated some right which was guaranteed to the defendant under the Fourteenth Amendment . . .

[T]he question is not whether the trial court failed to isolate and cure a particular ailing

instruction, but rather whether the ailing instruction by itself so infected the entire trial process

that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 146-47

(1973).

Brown was charged with possession of 179 plastic baggies of cocaine found on the

kitchen counter of his apartment. Over defense counsel's objection, the judge instructed the jury

as to the "room" or "drug factory" presumption, contained in New York Penal Law § 220.25(2).

The statute reads in relevant part as follows:

> The presence of a narcotic drug, narcotic preparation . . . in open view in a room,
> other than a public place, under circumstances evincing an intent to unlawfully
> mix, compound, package or otherwise prepare for sale such controlled substance
> is presumptive evidence of knowing possession thereof by each and every person
> in close proximity to such controlled substance at the time such controlled
> substance was found. . . .

N.Y. Penal Law § 220.25(2).

Brown contends that the charge was given erroneously because there was no evidence

that he mixed, compounded, packaged, or otherwise prepared the cocaine for sale, *e.g.*, the police

did not find a scale or any substance with which cocaine is "cut" or mixed prior to sale. *See*

Petitioner's Appellate Brief at 10, A.17.[3]

The undisputed proof at trial demonstrated that 179 small plastic bags of cocaine were

found in plain view on the kitchen counter next to a large amount of cash. The only two people in

the apartment at that time were Brown, who was standing about ten feet from the counter when

---

[3]  Citations to "A.__" refer to the Appendix of Exhibits submitted in connection with respondent's Answer
to the petition (Docket #6).

he was arrested, and his girlfriend. Courts in New York have found the statutory presumption set forth in § 220.25 proper where the trier of fact reasonably could conclude that the defendant was in close proximity to the drugs and that there was sufficient evidence of preparation for the purpose of sale. *See, e.g.*, *People v. McCall*, 137 A.D.2d 561 (2d Dept.) (defendant was discovered by the police behind a locked door with no one else on the premises, lying in a prone position behind a bar approximately 40 to 50 feet from the contraband, *i.e.*, 30 plastic envelopes of heroin and 50 tinfoil packets of cocaine, which were located on a table top), *lv. denied*, 70 N.Y.2d 1008 (1988); *People v. Staley*, 123 A.D.2d 407 (2d Dept.) (statutory presumption proper where police found, in open view, a substantial quantity of $10-packets of cocaine and, on the defendant's person, over $2,400 in cash, much of it in $10 and $20 denominations; court held that "[a]lthough the drugs were not in a state of being processed or packaged when discovered, [it did] not read the presumption so narrowly so that it would be inapplicable to narcotics found in a state of preparation for sale to users"), *lv. denied*, 68 N.Y.2d 1004 (1986). There is no plausible argument that 179 bags of cocaine is an amount reasonably associated with personal use. *Compare People v. Ithier*, 247 A.D.2d 203 (1st Dept.) (presumption proper where 100 vials of cocaine and a wad of cash found in close proximity to defendant), *lv. denied*, 92 N.Y.2d 854 (1998) with *People v. Martinez*, 83 N.Y.2d 26 (1993) (presumption improper where only one-eighth of an ounce of cocaine and no scales or other paraphernalia found in defendant's apartment). In light of the uncontested proof at Brown's trial, there was no error in the court's issuance of the "drug factory" or "room" presumption articulated in N.Y. Penal Law § 220.25(2).

In any event, there was more than ample evidence to support Brown's conviction under a constructive possession theory. Therefore, even if the "drug factory" presumption instruction was

erroneous, it cannot reasonably be said that the error so infected the entire trial process that the resulting conviction violates Brown's due process rights. *Cupp*, 414 U.S. at 146-47. Given the substantial evidence that Brown possessed the drugs in the apartment where he lived, any error did not have a "substantial and injurious effect or influence in determining the jury's verdict," and therefore the court's instructions did not cause "actual prejudice" to Brown. *Brecht v. Abrahmson*, 507 U.S. 619, 637-38 (1993) (internal quotation marks omitted).

## III.    Harsh and excessive sentence

Brown argues that his sentence of 8⅓ to 25 years was harsh and excessive because he had no prior arrests or prior convictions. He also notes that the sentence imposed was far greater than the sentence he was offered as part of a plea bargain. He suggests that he was sentenced vindictively for having exercised his right to go to trial.

With respect to his vindictive sentencing claim, I note that the difference between the offered sentence and the imposed sentence does not make out a claim of actual vindictiveness because the judge never stated or implied that the sentence was based on Brown's refusal of the plea offer.  *See Naranjo Filion*, 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003) (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer). The mere fact that the trial court, following conviction, imposed the maximum statutory sentence allowable does not, in and of itself, establish "actual vindictiveness." *See id.* (citing, *inter alia*, *Corbitt v. New Jersey*, 439 U.S. 212, 219, 223 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. . . . We discern no element of

retaliation or vindictiveness against [appellant] for going to trial. There is no suggestion that he

was subjected to unwarranted charges. Nor does this record indicate that he was being punished

for exercising a constitutional right. . . . There is no doubt that those homicide defendants who

are willing to plead *non vult* may be treated more leniently than those who go to trial, but

withholding the possibility of leniency from the latter cannot be equated with impermissible

punishment as long as our cases sustaining plea bargaining remain undisturbed."); *Chaffin v.

Stynchcombe*, 412 U.S. 17, 31 (1973); *United States ex rel. Williams v. McMann*, 436 F.2d 103,

106-07 (2d Cir. 1970), *cert. denied*, 402 U.S. 914 (1971); *Bailey v. Artuz*, 1995 WL 684057, at

*2 (N.D.N.Y. Nov. 15, 1995) ("[A] sententencing judge does not show vindictiveness . . . by

sentencing a defendant who, after withdrawing his plea of guilty to a lesser offense carrying a

lower penalty, has then been convicted of a more serious offense to the higher penalty authorized

. . . [Petitioner] has offered no evidence of vindictive sentencing beyond the fact of the plea

bargain offered to him and the actual sentence he received. . . . Therefore, [petitioner] has not

made out a claim of constitutionally impermissible vindictive sentencing."));

     Turning to Brown's claim that his sentence was harsh and excessive, I note that a

petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a

federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109

(2d Cir. 1977) (petitioner raised no cognizable Federal claim by seeking to prove that State judge

abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*,

334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute,

its severity would not be grounds for relief here even on direct review of the conviction, much

less on review of the state court's denial of habeas corpus.")). A challenge to the term of a

sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Here, Brown was convicted of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16), a class B felony under New York law. Brown's indeterminate sentence of 8⅓ to 25 years did not exceed the maximum sentence authorized for this offense. *See* N.Y. Penal Law § 70.00(1), (2)(b), (3)(b). Therefore, this claim is not cognizable on habeas review.

## IV.   Improper introduction of hearsay evidence

Prior to the commencement of trial, the prosecutor informed the parties that he intended to offer evidence that, late in the evening of April 1, 1997, a man named Carter Gupton ("Gupton") told Officers Salway and Adami that he had purchased drugs from a young black male at 51 Sullivan Street, where Brown was arrested several hours later. According to the prosecutor, this evidence was necessary to explain to the jury why the police knocked on Brown's door that night.

Defense counsel objected on the grounds that because Gupton was not going to testify, the officers' testimony about what he said to them was hearsay and not within any recognized hearsay exception; that the evidence was irrelevant since the legality of the officers' approach to Brown's apartment was not in dispute; and that Brown would be unduly prejudiced by the testimony.

The court's ruling represented a compromise between the parties' positions: the police officers were permitted to testify that Gupton took them to 51 Sullivan Street and said that he had

purchased cocaine there, but they were not permitted to testify regarding Gupton's description of

the person who had sold him the drugs. T.37.[4] The court also promised that it would give limiting

instructions after the officers' testimony. Accordingly, after Officer Adami testified that Gupton

led him to 51 Sullivan Street, the court instructed the jury as follows:

> You've just heard Officer Adami testify relative to [*sic*] occupants of the vehicle
> [*sic*] indicated to him, after being transported, and I caution you and I instruct you
> that this testimony is no proof whatsoever that the defendant in this case
> possessed any propensity or disposition to commit the crime. It is not being
> offered for such purpose. The sole reason that it is being offered is background to
> explain to you how the officers arrived at 51 Sullivan Street, and that's the only
> purpose. And, again, it is not to be taken or considered by you in any way, [*sic*]
> indicating that this defendant is involved or has committed any crime. And indeed
> he is not charged with the sale of cocaine.

T.201. The court gave a similar instruction during its final charge to the jury. T.508-09.

As a general rule, State evidentiary rulings do not implicate Federal law and are therefore

not reviewable by Federal courts. *See Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998).

Rather, such rulings are generally left to the discretion of the trial court. *Estelle v. McGuire,* 502

U.S. 62, 71-72 (1991). Thus, this Court may review a State court's allegedly erroneous

evidentiary ruling only if it was so egregious that it rendered the petitioner's trial fundamentally

unfair, in violation of the due process clause of the Fourteenth Amendment or the compulsory

process clause of the Sixth Amendment. *See Chambers v. Mississippi,* 410 U.S. 284, 302-03

(1973); *Rosario v. Kuhlman,* 839 F.2d 918, 924-25 (2d Cir. 1988) ("[E]rroneous evidentiary

rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance

of a writ of habeas corpus. Rather, the writ [should] issue *only* where [the] petitioner can show

that the error deprived [him] of a *fundamentally fair* trial.") (emphasis in original) (quotation

---

[4]  Citations to "T.__" refer to the trial transcript.

marks and citation omitted).

On direct appeal, the Fourth Department found no error in the trial court's ruling, holding that the court properly permitted the police to testify concerning their reason for going to defendant's residence since that testimony provided relevant background information explaining the police officers' actions and appropriate limiting instructions were given. *People v. Brown*, 274 A.D.2d at 941 (quotations and citations omitted).

At both State and Federal criminal trials, the trial judge is responsible for balancing of the probative value of certain evidence against its potential prejudicial effect. *See, e.g.*, *United States v. George*, 266 F.3d 52, 63 (2d Cir. 2001) (noting that the trial judge "is obviously in the best position to do the balancing mandated by [Federal] Rule [of Evidence] 403" and accordingly, has "broad discretion . . . to admit or exclude evidence pursuant to Rule 403") (internal quotations omitted); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *People v. Sandoval*, 34 N.Y.2d 371, 375 (1974) ("The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. . . . The particular limitations of proof must always depend on the individual facts and circumstances of each case. Such determination will best be made by the trial court."); *People v. Washington*, 233 A.D.2d 684, 687-88, 650 N.Y.S.2d 334, 338 (3d Dept. 1996) (It "is within the discretion of the Trial Judge to decide whether the probative worth of the evidence of other crimes on the issue of defendant's credibility outweighs the risk of unfair prejudice to him.") (citing cases), *appeal denied*, 89 N.Y.2d 1042, 659 N.Y.S.2d 873, 681 N.E.2d 1320 (1997).

Under New York and Federal law, evidence is not considered hearsay as long as it is not

admitted to prove the truth of matter asserted therein; such evidence properly may be admitted to establish, for instance, the reasons that the police took certain actions during a criminal investigation. *See*, *e.g.*, *United States v. Hoffer*, 869 F.2d 123, 126 (2d Cir.), *cert. denied*, 490 U.S. 1094 (1989) (where statement offered simply to show how the police came to arrive at the scene, it did not fit within the definition of hearsay because it was not "offered in evidence to prove the truth of the matter asserted"); *accord*, *e.g.*, *United States v. Gilliam*, 994 F.2d 97, 103 (2d Cir. 1993) (no hearsay violation where the district court specifically admitted the statement by the anonymous caller to establish the reasons for the return of the officers to the scene, not to prove the truth of the callers reference to the second gun).

Here, neither the trial court nor the Fourth Department erred in exercising that discretion. Therefore, the courts did not violate a State evidentiary rule. *See*, *e.g.*, *Jamison v. Grier*, 2002 WL 100642, at *17 (S.D.N.Y. Jan. 25, 2002) (finding that state trial court's admission of certain demonstrative evidence "not an abuse of discretion and thus not an error of state law, much less an error of constitutional magnitude"); *Rojas v. Senkowski*, 1996 WL 449321, at *5 (E.D.N.Y. July 29, 1996) ("The [State] trial court was entirely justified in finding that the probative value [of the evidence] outweighed any prejudice, and the decision was well within the judge's discretion. Thus there was no error of constitutional magnitude in the trial court's ruling that would warrant granting petitioner's habeas corpus petition on this ground.") (citation omitted).

Nevertheless, even if permitting the testimony was erroneous as a matter of State law (which it was not), any such error did not deprive Brown of a fundamentally fair trial given the strong evidence against him. I note that any potential prejudice was avoided by the court's repeated limiting instructions on this issue. Limiting instructions have been found to militate

against a finding of constitutional error. *See*, *e.g.*, *Cruz v. Greiner*, 1999 WL 1043961, at *31 &

n. 26 (S.D.N.Y. Nov. 17, 1999) (rejecting petitioner's argument that "if you throw a skunk into

the jury box, you can't instruct the jury not to smell it" and finding that the court's instruction to

disregard inadmissible evidence rendered harmless any prosecutorial misconduct).  The jury is

presumed to obey a court's curative instruction. *See*, *e.g.*, *Greer v. Miller*, 483 U.S. 756, 766 n. 8

(1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible

evidence . . . , unless there is an 'overwhelming probability' that the jury will be unable to follow

the court's instructions."). Moreover, in light of the Brown's acquittal on the charge of

possession of cocaine with intent to sell, he was not prejudiced by the admission of evidence that

cocaine was sold from his residence.

## V.      Ineffective Assistance of Appellate Counsel

### A.      Legal Standard

In order to prevail on a claim of ineffective assistance of counsel within the framework

established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)

("*Strickland*"), a habeas petitioner must satisfy a two-part test. First, a petitioner must

demonstrate that counsel's performance was so deficient that counsel was not functioning as

"counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other

words, a petitioner must show that his attorney's performance "fell below an objective standard

of reasonableness." *Id.* Second, a petitioner must show that counsel's deficient performance

prejudiced him. *Id.* at 694. To establish the "prejudice" prong of the *Strickland* test, a petitioner

must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the

trial would have been different. *Id.* at 694.  The issue of prejudice need not be addressed,

however, if a petitioner is unable to demonstrate first that his counsel's performance was

inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . .

address both components of the inquiry if the defendant makes an insufficient showing on one."

*Id.* at 697. Although the *Strickland* test was formulated in the context of evaluating the

effectiveness of trial counsel, it has been extended to claims regarding the performance of

appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing, *e.g.*, *Claudio v.

Scully*, 982 F.2d 798, 803 (2d Cir. 1992)).

      In performing his or her duties, appellate counsel need not present every non-frivolous

argument that could be made on the petitioner's behalf.  *Mayo*, 13 F.3d at 533; *see also Evitts v.

Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every

argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not

employ hindsight to second-guess an appellate attorney's choices concerning strategy.  *Mayo*, 13

F.3d 533; *see also Jones v. Barnes*, 463 U.S. 745, 754 (1984) ("For judges to second-guess

reasonable professional judgments and impose on appointed counsel a duty to raise every

'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective

advocacy[.]"). Omission of insignificant claims that will likely be unsuccessful does not

prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context,

a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would

have been successful . . . .'") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803)).

However, a habeas petitioner may establish constitutionally inadequate performance if he shows

that his appellate counsel omitted material and obvious issues while pursuing arguments that

were patently and significantly weaker. *Mayo*, 13 F.3d at 533.

B.     **Alleged Instances of Ineffectiveness**

Brown faults appellate counsel for failing to argue what he deems the "threshold issue" surrounding the warrantless search of his apartment and seizure of the 179 bags of cocaine, namely, "that the unjustifiable failure of the officers to obtain a warrant, where there was sufficient opportunity (approximately three (3) hours), and no existent exigencies, had [the] resultant effect of an invalid intrusion into the defendant's expectation of privacy in his home." *See* Motion to End Stay and to Supplement Petition at 4 (Docket #13). Brown submits that the arguments raised by counsel–that the police were unable to observe the contraband from their position at the front door when it was seized and "that the prosecution failed to demonstrate that 'exigent circumstances justified the warrantless entry,'"– were "utterly meritless." *See id.* at 4 (Docket #13).

Instead, on direct appeal, appellate counsel advanced the position that because the prosecution never argued at the suppression hearing that exigent circumstances justified the warrantless entry into Brown's apartment, it was precluded from raising that argument on appeal. Appellate Brief at 8-9, A.15-16 (citing *People v. Dodt*, 61 N.Y.2d 408 (1984); *People v. Young*, 202 A.D.2d 1024 (4ᵗʰ Dept. 1994); *People v. Russo*, 201 A.D.2d 940 (1994); *People v. Lloyd*, 167 A.D.2d 856 (4ᵗʰ Dept. 1990)). Under prevailing State case law, that argument had potential merit. *See, e.g., People v. Dodt*, 61 N.Y.2d at 416 (where prosecution did not rely on consent theory at suppression hearing and no such theory was discussed in hearing court's opinion, which found only that there was probable cause for defendant's arrest, prosecution precluded from raising on appeal, for first time, claim that defendant consented to go to police station) (citations omitted).

Appellate counsel also argued that the prosecution could not  properly rely upon the "plain view" exception to the warrant requirement where it never established that the original intrusion (by which the police gained a vantage point to see the contraband) was lawful. This also was a colorable argument. *See People v. Raymond*, 187 A.D.2d 463-64 (2d Dept. 1992) (finding that police action justified by operation of "plain view" doctrine where officer had lawfully obtained the vantage point from which he observed defendant, in plain view, possessing and attempting to hide or destroy contraband) (citing *Horton v. California*, 496 U.S. 128, 136-137 (1990)).[5] However, the Appellate Division did not agree.

As mentioned above, the argument that Brown claims appellate counsel *should* have made is that the police, lacking exigent circumstances, were unreasonable in failing to obtain a search warrant during the three hours between their conversation with the informant and their arrest of Brown, and that this unreasonableness made the ensuing seizure of the cocaine illegal. However, as the Supreme Court has explained, "'[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'" *Coolidge*, 403 U.S. at 474 (quoting *United States v. Rabinowitz*, 339 U.S. 56, 66 (1950)). The discrete issue of the police officers' failure  to procure a warrant despite having had adequate time to do so is but one factor to be considered in evaluating the existence of exigent circumstances. *See People v. Brown*, 274

---

[5]  "'What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification--whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused--and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.'" *Horton*, U.S. at 135-36 (quoting *Coolidge v. New Hampshire*, 404 U.S. 443, 465-66 (1971)).

A.D.2d at 941 (dissenting opinion) (citing *People v. Ramos*, 206 A.D.2d 260 (1st Dept. 1994);

*People v. Bloom*, 241 A.D.2d 975 (4th Dept. 1997)).

While appellate counsel did not argue the discrete issue of whether it was reasonable for the police not to obtain a warrant during the three hours that elapsed between the officers' conversation and their approach of Brown's apartment, ultimately, Brown was not prejudiced by appellate counsel's omission. First of all, as discussed, that fact, in and of itself, was not enough to render the warrantless entry and search unreasonable and violative of the Fourth Amendment. More important, the Appellate Division concluded that exigent circumstances existed by virtue of Brown's involvement in drug trafficking. By so holding, the court implicitly rejected the adequacy-of-time issue urged by Brown in his petition.

## CONCLUSION

For the reasons stated above, Paul Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Brown has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

*/s/ Victor E. Bianchini*

_____
        VICTOR E. BIANCHINI
        United States Magistrate Judge

DATED:        May 13, 2005
              Rochester, New York.

-22-